CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 07 2014
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| LEWIS "WALLY" MINOR, JR., ) | Civil Action No. 3:14CV00019 |
| Plaintiff, ) ) | **MEMORANDUM OPINION** |
| v. ) ) | By: Hon. Glen E. Conrad |
| TYSON FOODS, INC. T/A ) TYSON FARMS, INC., ) ) | Chief United States District Judge |
| Defendant. ) | |

Lewis "Wally" Minor, Jr., proceeding pro se, filed this action in the Circuit Court of Louisa County against Tyson Foods, Inc. ("Tyson"). Tyson removed the action to this court on the bases of federal question jurisdiction and diversity jurisdiction, and then moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the court will grant Tyson's motion.

## Background

Minor is an African-American farmer. On February 13, 2009, he entered into a three-year contract with Tyson to raise broiler chickens on his family's farm in Louisa County, Virginia (the "Production Contract"). Under the terms of the Production Contract, Minor was responsible for "purchasing feed [and] medicines, . . . , buying propane gas . . . in order to keep the birds warm during the cool and cold months, and supply[ing] any other necessary [items] such as water, straw, hay, etc. in order maximize [the chickens'] weight gain into maturation." Compl. 3, ¶ 3, Docket No. 1-1; see also Production Contract 1, § 3, Compl. Ex. A, Docket No. 1-1 ("Producer will furnish labor, materials, and utilities necessary for the receipt of chickens and the production of Broilers and will when appropriate seek Company's technical advice. . . . Producer will maintain

biosecure housing for Company's chickens, feed, and medication, and will promote a disease-free environment.").

In 2010, Minor made over $40,000 in repairs to one of his chicken houses at the request of Chuck Moore, Tyson's Live Production Manager. The following February, Tyson "refused to supply him with any baby chicks. . . ." Id. at 4, ¶ 7. Although this "caused [Minor] near catastrophic financial loss," he "had a second source of income and his parents provided him loans for his operation to continue." Id. at 4, ¶¶ 8-9.

Minor alleges that Tyson employees attempted to "micro-manage" him. Id. at 5, ¶ 12. They would enter his farm "without notice and without permission," and inquire about his whereabouts when he was not there. Id. at 5, ¶¶ 10, 3. On one occasion, a Tyson employee "observed [Minor's] sister-in-law, a Caucasian female." Id. at 5, ¶ 13. Around the same time, Minor purchased a new truck and his parents finished constructing a new home on the farm. Minor asserts that "[a]ll of these observations were signs to [Tyson's] employees that this 'negro was becoming uppity' as African-American farmers should not own a new home or a new truck and marry Caucasians." Id. at 5, ¶ 15.

Minor alleges that Tyson employees "'bluffed' that Tyson was going to do away with 'truss houses' like the ones that [Minor] owned." Id. at 6, ¶ 16. They also "complained often that [Minor] was away from the farm too much," and that "his chicks were too cold or sick." Id.

At some point, Minor applied for a loan from Farm Credit Bureau in Fredericksburg, Virginia. The application was denied. Minor "strongly suspect[s]" that this resulted from Tyson employees "express[ing] 'negative creditworthiness' remarks." Id. at 6, ¶ 17.

By letter dated January 11, 2012, Cal Moore, Tyson's Broiler Manager, advised Minor that the Production Contract would be terminated in 90 days due to "serious animal welfare issues on

2

[Minor's] farm caused by [Minor's] inability to provide utilities." Compl. Ex. B, Docket No. 1-1. Moore emphasized that Minor had run out of propane to heat one of his chicken houses in December of 2011, and that eight-day-old birds had been subjected to temperatures as low as 66 degrees. Moore also noted that Minor's propane tanks were low again on January 2, 2012, and that Tyson had to order and pay for additional propane in order to maintain proper temperatures in the chicken houses.

On March 18, 2012, Dr. George A. Bates sent Tyson a letter on Minor's behalf, in which he offered to provide "mediation and arbitration services." Compl. Ex. D, Docket No. 1-1. By letter dated March 30, 2012, Tyson declined the offer.

Minor filed the instant action against Tyson on April 9, 2014. Minor asserts that the action is "brought pursuant to 42 U.S.C. 2000(e) of the 1964 Civil Rights Act . . . and Article X of the United States Constitution, for violations of the Thirteenth Amendment of the United States Constitution pursuant to 42 U.S.C. 1981, 1982, and 1985 and for various other federal and state causes of action such as breach of contract and tort claims of the State of Virginia . . . ." Compl. at 1. Under the heading "Damages," Minor asserts the following:

> 1. For Defendant's breach of contract generally in not offering the Plaintiff much constructive guidance and not granting the Plaintiff the benefit of the Conflict Resolution Procedure, the Plaintiff demands damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00).
>
> 2. For Defendant's intentional damage to the Plaintiff's financial credit, the Plaintiff demands damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00).
>
> 3. For the Plaintiff's detrimental reliance upon the Defendant's management directives, the Plaintiff demands actual damages of FORTY-TWO THOUSAND DOLLARS ($42,000.00) for expenditures that did not improve chick production.

3

4. For the Defendant's violations of the 1855 Civil Rights Act and the 13th Amendment of the U.S. Constitution (racial discrimination), the Plaintiff demands damages of TWO HUNDRED THOUSAND DOLLARS ($200,000.00).

Id. at 8-9.

On June 12, 2014, Tyson moved to dismiss the complaint. The following day, the court issued a Roseboro[1] notice directing Minor to file a response within fifteen days. On July 8, 2014, Minor filed a motion to quash the notice of removal. Minor's motion was denied on July 23, 2014, and he was directed to file a response to Tyson's motion to dismiss. The motion to dismiss has now been fully briefed and is ripe for disposition.[2]

## Standard of Review

Tyson has moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). "Although a pro se litigant's pleadings are to be construed liberally, his complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level' and that 'state a claim to relief that is plausible on its face.'" Hodge v. Gansler, 547 F. App'x 209, 210 (4th Cir. 2013) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 555 (2007)). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis, 588 F.3d at 193. While the court must "accept the well-pled allegations of the complaint as true," Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997), "statements of bare legal conclusions

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[2] Neither side requested a hearing on the motion, and the court has determined that oral argument would not aid in the decisional process.

4

'are not entitled to the assumption of truth' and are insufficient to state a claim." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

## Discussion

### I. Claims under federal law

In moving to dismiss the complaint under Rule 12(b)(6), Tyson argues that Minor has failed to state an actionable claim for relief under any of the federal statutory or constitutional provisions referenced in the complaint. For the following reasons, the court agrees.

### A. 42 U.S.C. § 2000(e)

Minor first asserts that this action is brought pursuant to "42 U.S.C. 2000(e) [sic] of the Civil Rights Act of 1964." Compl. at 1. Title VII of the Civil Rights Act, codified at 42 U.S.C. §§ 2000e to 2000e-17, prohibits "employer[s]" from engaging in discriminatory "employment practices." 42 U.S.C. § 2000e-2(a)(1). It is well settled that the statute's protections extend only to employees and not to independent contractors. See Farlow v. Wachovia Bank of N.C., N.A., 259 F.3d 309, 313 (4th Cir. 2001); Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 261 (4th Cir. 1997).

Upon review of the complaint and the attached Production Contract, the court concludes that Minor has failed to state a claim under Title VII. Under the terms of the Production Contract, Minor agreed to provide production services for Tyson as an "independent contractor" for a three-year period. Compl. Ex. A at § 8. Minor does not claim that he was an employee of Tyson,

5

and his complaint lacks sufficient facts to establish the existence of an employer-employee relationship. Consequently, Minor's Title VII claim is subject to dismissal under Rule 12(b)(6).[3]

### B. Article X of the United States Constitution

Minor also asserts that this action is brought pursuant to Article X of the United States Constitution. As Tyson explains in its brief in support of the instant motion, the Constitution consists of only seven Articles. Accordingly, this allegation fails to state a claim upon which relief may be granted.

### C. Thirteenth Amendment to the United States Constitution

Minor's claim under the Thirteenth Amendment is also subject to dismissal under Rule 12(b)(6). That Amendment states that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Am. XIII. It is intended "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." United States v. Kozminski, 487 U.S. 931, 942 (1988) (internal citation and quotation marks omitted); see also Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ., 89 F.3d 174, 181 (4th Cir. 1996) (holding that a community service requirement was "in no way comparable to the horrible injustice of human slavery" and, thus, did "not violate the Thirteenth Amendment prohibition of involuntary servitude"); Steirer v. Bethlehem Area Sch. Dist., 987 F.2d 989, 999 (3d Cir. 1993) ("Modern day examples of

---

[3] Even if Minor had alleged sufficient facts to establish that he was an employee of Tyson, his Title VII claim would nonetheless be subject to dismissal for lack of subject matter jurisdiction, since there is no indication that Minor filed a charge of discrimination with the Equal Employment Opportunity Commission. See Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 406 (4th Cir. 2013) ("[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies.") (citing Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009)).

6

involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement.").

Here, the facts alleged in support of Minor's Thirteenth Amendment claim simply do not meet this standard. He has not alleged anything "'akin to African slavery' or any modern analogue." Zavala v. Wal-Mart Stores Inc., 691 F.3d 527, 540 (3d Cir. 2012). Accordingly, his Thirteenth Amendment claim must be dismissed.

### D.     42 U.S.C. §§ 1981, 1982, and 1985

Minor's complaint also fails to state any actionable claims for race discrimination in violation of 42 U.S.C. §§ 1981, 1982, and 1985. Among other deficiencies, Minor's conclusory assertion that Tyson acted with racial animus is supported only by speculation and conjecture. See Compl. ¶¶ 14-15 (concluding, without factual support, that his new truck and his parents' new home "were signs to [Tyson] employees that this negro was becoming uppity"). He does not allege any facts that plausibly suggest that Tyson's decision to terminate the Production Contract was motivated by race. In the absence of such facts, the court must dismiss Minor's claims under the cited civil rights statutes. See Francis v. Giacomelli, 588 F.3d 186, 197 (4th Cir. 2009) (affirming the dismissal of the plaintiffs' claim under § 1985 where the plaintiffs failed to plead specific facts demonstrating that the defendants were "'motivated by a specific class-based, invidiously discriminatory animus to [] deprive the plaintiff[s] of the equal enjoyment of rights secured by the law to all'") (quoting Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995)); Jordan v. Alternative Res. Corp., 458 F.3d 332, 347 (4th Cir. 2006) (affirming the dismissal of the plaintiff's discrimination claim under § 1981 where the plaintiff's factual allegations provided no support for the "conclusory" assertion that race was a motivating factor in his termination).

7

## II. Remaining claims

Minor attempts to assert a number of other claims in section III of his complaint. For the following reasons, the court concludes that each of these claims is subject to dismissal.

In paragraph 1 of section III, Minor seeks to recover damages "[f]or Defendant's breach of contract generally in not offering [him] much constructive guidance and not granting [him] the benefit of the Conflict Resolution Procedure." Compl. at 8, ¶ 1. Aside from this allegation, nothing more is said about the claim for breach of contract. Minor does not cite to any particular contractual provisions, or provide any additional allegations to support his assertion that Tyson's actions constituted a breach of the Production Contract. Because the breach of contract claim is not supported by "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, this portion of the complaint must be dismissed.

In paragraph 2 of section III, Minor requests $100,000.00 "[f]or Defendant's intentional damage to [his] financial credit." Compl. 8, ¶ 2. This claim is also subject to dismissal, since the court is unable to discern what particular cause of action Minor is attempting to assert. See, e.g., Nance v. Citimortgage, Inc., No. 1:13CV1062, 2014 U.S. Dist. LEXIS 108871, at *31 (M.D.N.C. Aug. 7, 2014) (dismissing the plaintiff's claim for "negligent and/or intentional damage to credit report" since the court was unable to determine "what type of claim [the plaintiffs] intended to bring"). Moreover, the complaint makes clear that the claim is based on mere speculation, which is insufficient to satisfy the pleading requirements of Rule 12(b)(6). See Compl. 6, ¶ 17 (Plaintiff "suspects that . . . the Defendant's employees . . . expressed 'negative creditworthiness' remarks to the [Farm Credit Bureau] which caused them to deny the Plaintiff's loan . . . .") (emphasis added).

Finally, in paragraph 3 of section III, Minor attempts to assert a claim for "detrimental reliance upon the Defendant's management directives." Id. at 9, ¶ 3. However, "no independent

8

cause of action for detrimental reliance exists" under Virginia law. <u>Guardian Pharm. of Eastern NC, LLC v. Weber City Healthcare</u>, No. 2:12cv00037, 2013 U.S. Dist. LEXIS 9937, at *21-22 (W.D. Va. Jan. 24. 2013) (citing cases). Accordingly, this claim must be dismissed.

### **Conclusion**

For the reasons stated, the court will grant the defendant's motion to dismiss. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This 7th day of October, 2014.

*/s/ Glen Conrad*

Chief United States District Judge